<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| RAMKRISHNA S. TARE, | ) | |
| Plaintiff, | ) ) ) | Civil Action No.: 07-583 (JLL) |
| v. | ) ) ) | **OPINION** |
| BANK OF AMERICA, DONALD E. GUINN, O. TEMPLE SLOAN, JR., and STEVE McMILLAN, | ) ) ) ) | |
| Defendants. | ) ) | |

**LINARES**, District Judge.

This matter comes before the Court by way of a motion to dismiss Plaintiff Ramkrishna Tare's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants Bank of America, Donald E. Guinn, O. Temple Sloan, Jr., and Steven McMillan's (collectively the "Bank"). Mr. Tare alleges claims for malicious prosecution, conspiracy to maliciously prosecute, malicious use of process, conspiracy to misuse process, fraud upon the court, conspiracy to commit fraud upon the court, Bivens conspiracy, and a conspiracy with Gary Marks, Richard Honig, and/or their law firms, to maliciously prosecute and to maliciously misuse process. Also before the Court is a cross motion to strike portions of the Bank's brief and to impose Rule 11 sanctions against the Bank's counsel. The Court has considered the submissions made in support of and in opposition to the motion and decides this matter without oral argument

pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Bank's motion is granted.

## I. BACKGROUND

Mr. Tare is the founder of WebSci Technologies, Inc. ("WebSci"). (Verified Compl. ¶ 9 [hereinafter "Am. Compl."].) On July 26, 2002, WebSci filed for Chapter 11 bankruptcy; Mr. Tare filed for Chapter 7 bankruptcy on the same day. Fleet National Bank ("Fleet") filed a proof of claim in these bankruptcy actions for unpaid monies borrowed from Fleet's predecessor. See In re WebSci Tech., Inc., Bankr. D.N.J. No. 02-38258 [hereinafter the "Bankruptcy Proceeding"]. FleetBoston merged into Bank of America, N.A., on or about April 1, 2004.

In response to letters Mr. Tare sent to officers and directors of FleetBoston, Fleet and FleetBoston sought an injunction against Mr. Tare in the Bankruptcy Court. See Fleet Bank, et al. v. WebSci, Tech., Inc., et al., Bankr. No. 02-ap-3794 [hereinafter the "Injunction Proceeding"]. The court entered an Order granting a permanent injunction (the "Adversary Injunction") against Mr. Tare on October 7, 2003. Id. at DE 42. Paragraph 5 of the Adversary Injunction provides:

> Defendants WebSci Technologies, Inc., Ramkrishna S. Tare . . . be and are hereby permanently restrained and enjoined from making any type of verbal or written communication to, or having any contact with, (I) FleetBoston Financial Corp., Fleet National Bank, or any of the predecessors, successors, affiliates, subsidiaries, or related companies of either (hereinafter, the "FleetBoston Companies") or (ii) any director, officer, employee, or agent of the Fleet Boston Companies, or (iii) the law firm of Buchanan Ingersoll Professional Corporation, except through the Princeton, New Jersey offices . . . .

Id. An order in the Bankruptcy Proceeding confirming the amended plan of liquidation for WebSci was entered on May 18, 2004. Bankruptcy Proceeding, Bankr. No. 02-bk-38258, at DE 485. The order also enjoined Mr. Tare from communicating with FleetBoston. This injunction,

the "Plan Injunction," provided:

> **FBFC** shall mean FleetBoston Financial Corp., Fleet, any of their Affiliates, subsidiaries, or related companies, as well as their directors, officers, employees, attorneys and agents, including without limitation, the attorneys for Fleet as the Plan Proponent.
> * * *
> [T]he Debtor, the Trustee and each and every Creditor or party in interest of the Debtor's estate . . . (hereinafter, "Restrained Parties") shall be and are hereby immediately:
>     (a) preliminarily and permanently restrained and enjoined from making any type of verbal or written communication to, or having any contact with, (I) the Plan Proponent, FBFC, or (ii) any director, officer, employee, or agent of the Plan Proponent or FBFC, or (iii) the law firm of Buchanan Ingersoll Professional Corporation, except through the Princeton, New Jersey offices . . . .

Id. at 466, 485. Mr. Tare appealed the confirmation order as well as three other bankruptcy court orders. This Court, the Honorable William H. Walls, affirmed the orders. Tare v. Marks, Nos. 03-5444, 04-3657, 04-3658, 04-3659 (D.N.J. Jan. 4, 2005) [hereinafter "Bankruptcy Appeals"].

On November 22, 2004, Mr. Tare sent a letter to the Honorable Rosemary Gambardella, the judge in the Bankruptcy Court who issued the Injunctions; the letter stated:

> **Please accept this letter as notice to the Court that I do not recognize its jurisdiction in the [Bankruptcy] proceeding . . . .**
> * * *
> Accordingly, <u>I will consider all orders of this Court, in this specific adversary complaint, to be irrelevant</u>.

Injunction Proceeding, Bankr. No. 02-ap-3794, at DE 56, Cert. of Flavio L. Komuves dated Feb. 4, 2005 [hereinafter ("Komuves Cert.")], Ex. I (emphasis in original). Shortly thereafter, Mr. Tare sent at least two letters to several members of Bank of America's Board of Directors–one on December 28, 2004, and the other on January 3, 2005. Id. at Cert. of Albert Rocha dated Jan. 31, 2005 [hereinafter ("Rocha Cert.")], Exs. A; Komuves Cert., Ex. H. In response to these letters, the Bank commenced a contempt proceeding (the Injunction Proceeding) in the Bankruptcy Court

on February 24, 2005.  See id.  On March 8, 2005, the Bank filed with this Court a motion to withdraw reference with respect to the contempt proceeding.  Fleet Nat'l Bank v. WebSci Tech., Inc., No. 05-1306 (D.N.J. JLL) [hereinafter "Contempt Action"].  On December 29, 2005, this Court granted the motion to withdraw the reference.  Id. at DE 47, 48.  In its Opinion, the "Court agree[d] with [the Bank] that the action involves criminal, rather than civil, contempt," and that, therefore, the Bank had "appropriately term[ed] their action as one for criminal contempt."  Id. at DE 48.

On August 12, 2005, as part of the Contempt Action, counsel for the Bank sent Magistrate Judge Hedges a letter requesting:

> (1) a case management conference, to address case management issues, including limitations on future filings in this matter; (2) instructions regarding the voluminous papers from Tare and his associates already on file; and (3) permission to rely on Movants' prior briefs, and to be relieved from responding to present or future filings by Tare and his associates, unless a response is specifically requested by Your Honor.

Id. at DE 40, at 3-4.  In response to this request, Magistrate Judge Hedges heard argument (via telephone) from the parties.  See id. at DE 36 (Case Management Order).  On September 21, 2005, he entered a Case Management Order ("CMO").  Id.  The CMO granted the Bank's application and provided in part:

> [Mr.] Tare and any person acting on his behalf or at his direction . . . are hereby prohibited from filing further papers with the United District Court for the District of New Jersey, or submitting correspondence or other documents to the Court, without prior leave from the undersigned Magistrate Judge.  The Clerk of the Court shall not file or accept for filing any papers from Tare . . . without prior authorization from the undersigned Magistrate Judge.

Id.  In accordance with the CMO, Magistrate Judges Hedges returned some of Mr. Tare's subsequent submissions to this Court, including some asserting conflicts of interests that were

addressed to the Bankruptcy Appeals. Mr. Tare filed an appeal of the CMO with this Court on October 6, 2005. In addition to the appeal of the CMO, Mr. Tare also filed an application to clarify the CMO. On February 2, 2006, Magistrate Judge Hedges issued an order amending the CMO. Id. at DE 53. The Order states that "Paragraph 2 of the [CMO] is hereby amended to allow [Mr.] Tare to file papers concerning his bankruptcy actions docket numbers 03-5444, 04-3657, 04-3658 and 04-3659 pending before Judge W.H. Walls without having to submit them for my review in advance." Id.

On May 4, 2006, this Court granted Mr. Tare's appeal of the CMO. The Court "note[d] that the injunctive relief set forth by the September 21 Order undoubtedly *implicates* [Mr.] Tare's Constitutional rights, most noticeably, his access to the courts." Id. at DE 57, at 8 (emphasis added). The Court also noted that this "is not to say that [the Bank's] right to be free from harassment is of less importance to this Court." Id. The Court stated that it was "unable to review the basis for Judge Hedges' September 21 Order since it was based on a telephonic case management conference of which there is no transcript" and because Magistrate Judge Hedges "submitted only an Order and made no proposed findings of fact or recommendations to this Court." Id. at 7, 8. The Court thus found that Judge Hedges had not "handled [the Bank's] request in accordance with the Local Civil Rules;" the "matter should have been disposed of by report and recommendations, not by case management order alone." Id. at 8.

In the same opinion, granting Mr. Tare's appeal of the September 21 Order, this Court also reconsidered its prior decision to withdraw the reference from the Bankruptcy Court. Id. at 13. The Court decided sua sponte to refer the contempt motion bank to the Bankruptcy Court. Id. After further review of the Adversary and Plan Injunctions issued by the Bankruptcy Court, this

Court determined that some ambiguity existed, and that the ambiguity was best resolved by the Bankruptcy Court. Id.  The question remanded to the Bankruptcy Court was whether the Plan Injunction, which does not specifically reference successors of FleetBoston, "'trump[ed]' the relief issued in the Adversary Injunction." Id.   On remand, the Bankruptcy Court held that

> [t]he Adversary injunction was not superceded or "trumped" by the entry of the Plan Injunction.  Following their respective dates of entry, and prior to the date of entry of this Order, each of the Injunctions continued in full force in accordance with their respective terms.  Each of the Injunctions applied to Tare's conduct as alleged in the Contempt Motion. Tare's renewed objections to the terms of the Injunctions are hereby overruled.

Injunction Proceeding, Bankr. No. 02-ap-3794, at DE 146.  The Bank chose not prosecute the matter further.

Prior to entry of the CMO by Magistrate Judge Hedges, on September 6, 2005, in the Bankruptcy Appeals before Judge Walls, Mr. Tare made a motion to supplement the record on appeal.  See, e.g., Bankruptcy Appeals, No. 03-5444, at DE 22.  Mr. Tare alleged that there was evidence of conspiracies and conflicts that the court should consider.  See, e.g., id. ("[I]t is my position that the documents I have filed with this Court, after the appeals were briefed, such as the criminal conspiracy diagram which shows the concealed conflicts are certainly to be included to expand the record of appeal.") (emphasis in original).  The Bank opposed the motion, arguing that new allegations, not raised before the bankruptcy court below, should not be considered on appeal.  See id. at DE 23 (Br. of Appellee Bank of America, N.A., Successor in Interest to Fleet National Bank, in Opp'n to Appellant's Mot. to Supplement the Record on Appeal, at 5.)  On November 3, 2005, Judge Walls denied Mr. Tare's motion, holding that

> Mr. Tare presents new evidence to the Court which he claims demonstrates a web of conspiracy between the Trustees and Creditors in various related bankruptcies that

> resulted in the concealment of conflicts between parties and which infected the bankruptcy proceedings with fraud.  However, the alleged conflicts raised by Mr. Tare were never raised before Bankruptcy Judge Rosemary Gambardella.  As such, this Court may not consider, pursuant to Bankruptcy Rule 8006, the "new evidence" that was not part of the record [below].

Id. at DE 26.  Judge Walls additionally held that "the newly discovered evidence presented by Mr. Tare conceivably could have been discovered prior to the Bankruptcy Judge entering the orders which he now appeals."  Id.  Judge Walls also noted "that Mr. Tare has previously raised similar factual issues of conflicts of interest that have been rejected by the Bankruptcy Court, this Court and the Third Circuit."  Id.  Judge Walls subsequently also denied Mr. Tare's bankruptcy appeals.  Id. at DE 34.  The Third Circuit affirmed both orders–the order denying the motion to supplement the record and the order denying the bankruptcy appeals.  In re WebSci Tech., Inc., No. 06-2226 (3d Cir. May 16, 2007) (Opinion and Judgment).

## II.  LEGAL STANDARDS

On a motion made pursuant to Federal Rule of Civil Procedure 12(b)(6) courts must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party.  See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).  But, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 321 (3d. Cir. 2008).  Thus, "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element."  Wilkerson, 522 F.3d at 322 (quoting Twombly, 550 U.S. at 556).  Courts are not required to credit bald assertions or legal conclusions draped in the guise of factual allegations.  See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429 (3d Cir. 1997).  In evaluating a

plaintiff's claims under this standard, "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). However, "a document integral to or explicitly relied on in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations omitted, alteration in original).

In the Bank's briefs it refers to numerous court dockets and filings in various matters involving the Bank (or FleetBoston) and Mr. Tare. Although some of these court filings are included as exhibits to Mr. Tare's Amended Complaint, not all are attached. However, because all of the filings referenced by the Bank and included in the background section of this Opinion are an integral part of Mr. Tare's claims and because Mr. Tare is fully aware of them as they are matters he has actively litigated, the Court will consider the referenced filings without converting the present motion to dismiss into one for summary judgment.

### III.    DISCUSSION

In the present matter before this Court Mr. Tare essentially argues that the Bank filed the Contempt Action against him and then sought the CMO in that action in an effort to imprison him and interfere with his Bankruptcy Appeals. He asserts that, as a result of the CMO, documents that would have positively impacted the Bankruptcy Appeals never reached Judge Walls. He then argues that because that evidence and the arguments related to it were not before Judge Walls, the Third Circuit would not consider them on further appeal. Based on this basic theory, he asserts three primary causes of action: malicious prosecution, misuse of process, and fraud upon the court. In addition to these claims, he also brings claims for conspiracy to commit these actions as

well as a Bivens conspiracy claim.

As an initial matter, the Bank argues that, although repackaged as new claims, Mr. Tare's Amended Complaint attempts to re-litigate issues previously litigated and resolved in other proceedings. Thus, it argues that Mr. Tare's present claims are barred by the doctrine of res judicata. It is true that here Mr. Tare makes claims of conspiracy and that he has made claims of conflicts of interest and conspiracy throughout the various actions previously litigated. As Judge Walls stated in the Bankruptcy Appeals: "Mr. Tare has previously raised similar factual issues of conflicts of interest that have been rejected by the Bankruptcy Court, this Court and the Third Circuit." However, Mr. Tare's present claims are not solely raising these issues. Rather, he is attacking the specific filings of the Bank in the Contempt Action. The Bank has not clearly indicated how these particular claims had been or could have been addressed in the prior adjudications. Therefore, the Court will address the merits of Mr. Tare's claims. However, to the extent that the underlying basis for a claim reasserts issues previously resolved, this Court will not re-examine those issues.

### A. Malicious Prosecution or Malicious Use/Misuse Process

In order to establish a claim for malicious prosecution, a plaintiff must show: "(1) that the criminal action was instituted by the defendant against the plaintiff, (2) that it was actuated by malice, (3) that there was an absence of probable cause for the proceeding, and (4) that it was terminated favorably to the plaintiff." Simon v. Golden Nugget Hotel & Casino, 844 F.2d 1031, 1035 (3d Cir. 1988). The Bank argues, given the Injunctions and subsequent letters sent by Mr. Tare, that Mr. Tare cannot show that the Contempt Action was initiated without probable cause. It also argues that Mr. Tare cannot plead that the action terminated favorably to him, arguing that

its decision to forgo further prosecution after Judge Gambardella's clarification of the Injunctions in their favor is irrelevant. On the other hand, Mr. Tare argues that by choosing not to further prosecute the Contempt Action, the Bank was "effectively acknowledg[ing] . . . [that it] was initiated, without reasonable or probable cause and it was actuated by malice." (Am. Compl. ¶ 185.)

Two injunctions had been issued against Mr. Tare by Judge Gambardella in the various bankruptcy actions. Despite the Injunctions, Mr. Tare sent additional letters to members of the Bank's Board of Directors. Mr. Tare also sent a letter to Judge Gambardella explicitly stating that he "consider[ed] all orders of [the Bankruptcy] Court, in this specific adversary complaint, to be irrelevant." These undisputed facts demonstrate that the Bank had ample cause to bring the Contempt Action. In fact, in this Court's opinion on the Bank's motion to withdraw, it held that the Bank had "appropriately term[ed] [its] action as one for criminal contempt."

This Court also agrees with the Bank that Mr. Tare cannot plead that the action terminated in his favor. Upon remand to the Bankruptcy Court, Judge Gambardella clarified that both Injunctions "continued in full force" and that "[e]ach of the Injunctions applied to Tare's conduct as alleged in the Contempt [Action]." Such a finding cannot plausibly be construed as a termination in Mr. Tare's favor. That the Bank chose not to further prosecute the matter after Judge Gambardella's clarification does not alter this finding. Thus, Mr. Tare has failed to state a claim for malicious prosecution.

Under Rule 15(a) of the Federal Rules of Civil Procedure "leave [to amend a complaint] shall be freely granted when justice so requires." Although such a grant is within the discretion of the court, to satisfy the requirement that it be freely given, the general rule is that is ought to be

granted unless it the Court finds that amendment will result in "undue delay," that there has been "bad faith or dilatory motive on the part of the movant," that there has been "repeated failure to cure deficiencies by amendments previously allowed," that amendment will result in "undue prejudice to the opposing party," or that amendment will be "futile." Foman v. Davis, 371 U.S. 178, 182 (1962); see also McGreevy v. Stroup, 413 F.3d 359, 371 (3d Cir. 2005). Here, because the basis for this claim depends solely on the various court proceedings and related filings, there are no additional facts that would change the outcome. Therefore, this Court finds that leave to further amend the Amended Complaint would be futile and dismisses this claim with prejudice.

      B.      **Malicious Abuse of Process**

This claim is based on the CMO issued by Magistrate Judge Hedges in the Contempt Action before this Court. Mr. Tare asserts that the Bank "engaged in further acts by maliciously abusing the Contempt-Complaint to prevent Judge Walls from having the full record needed to rule on the appeals." (Compl. ¶ 145 (emphasis in original).) He asserts that, by proposing the CMO, the Bank was trying to "obstruct the fair resolution of the bankruptcy appeals." (Id. at ¶ 147.) He argues that these "improper further acts resulted in the resolution of the appeals in [the Bank's] favor." (Id. at ¶ 148.)

The essential elements of misuse or abuse of process "are an ulterior motive and some further act after the issuance of process representing the perversion of the legitimate use of the process." Simon v. Golden Nugget Hotel & Casino, 844 F.2d 1031, 1036-37 (3d Cir. 1988) (internal citations omitted)  In Simone the court found that "[u]nquestionably, the Golden Nugget used the legal process of arrest against Simone," but it also found that "evidence of any connection between the arrest and a purpose of preventing Simone from returning to the Golden

Nugget" was missing from the record.  Id. at 1037.

The Bank asserts that it never proposed the CMO, and, thus, Mr. Tare's claim must fail. However, while it is unclear if the Bank proposed the exact order entered by Judge Hedges, it clearly sought some type of order from the court to relieve it from responsive filings and to limit Mr. Tare's future filings "in this matter."  Mr. Tare argues that such a request coupled with this Court's opinion granting his appeal of the CMO make it clear that the Bank made an improper application, an illegitimate use of process, in order to subvert his constitutional rights.  This Court disagrees.  First, as the opinion makes clear, this Court did not grant Mr. Tare's appeal because it held that Mr. Tare's constitutional rights had been violated.  It found that the CMO "implicate[d]" Mr. Tare's constitutional rights.  However, it also found that the Banks' "right to be free from harassment [was not] of less importance to this Court."  Based on these findings, it held that the CMO issued by Magistrate Judge Hedges, which was not issued as a report and recommendation and which contained no basis for the decision, did not comply with the necessary procedural rules. That the CMO as issued by Magistrate Judge Hedges was vacated by itself is not dispositive of the question whether it was legitimate for the Bank to request relief from what it viewed as burdensome and frivolous filings by Mr. Tare.  The Court finds that the Bank's request for a case management order was not an illegitimate use of process.

More importantly, there is no evidence that the Bank sought to use the CMO in the Bankruptcy Appeals to suppress evidence.  As a matter of fact, such use would have been unnecessary–before the CMO was entered, Mr. Tare had filed a motion in the Bankruptcy Appeals requesting permission to supplement the record with the evidence that he now alleges never was considered in those proceedings.  The Bank did oppose that motion, but it based its argument on

the fact that new allegations should not be considered on appeal when they were not part of the record below in the Bankruptcy Proceeding. Judge Walls denied Mr. Tare's request to supplement the record for this reason, and the Third Circuit upheld Judge Walls' decision for the same reason. Thus, Mr. Tare is correct that the additional conflict "evidence" was not considered by Judge Walls, but the reason had nothing to do with the CMO or any alleged use of it by the Bank.

Mr. Tare asserts that "the allegations in the complaint should be accepted as true for the purpose of this complaint." (Response to Defs.'s Mot. to Dismiss the Compl. & Cross-Mot. to Strike Certain Sections of Defs.'s Br. & to Impose Sua Sponte R. 11 Sanctions Against Counsel, at 17 [hereinafter "Pltf.'s Opp'n"].) However, as Twombly makes clear, bare allegations and speculation are insufficient to state a claim. Here, the various court orders actually contradict Mr. Tare's assertions. Therefore, Mr. Tare has also failed to state a claim for this cause of action. For the same reasons discussed above, this Court also finds that leave to amend would be futile. Thus, this claim is also dismissed with prejudice,

    **C.**    **Fraud Upon the Court**

Actions for fraud on the court are very rare and have a "demanding standard of proof." Herring v. United States, 424 F.3d 384, 386 (3d Cir. 2005). A claim for fraud on the court requires a showing that there was: "(1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) in fact deceives the court." Id. Additionally "a determination of fraud on the court may be justified only by the most egregious misconduct directed to the court itself, and . . . it must be supported by clear, unequivocal and convincing evidence." Id. at 386-87 (internal quotations omitted). Examples of egregious misconduct

sufficient for this claim include things "such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated." Id. at 386 n.1 (quoting Rozier v. Ford Motor Co., 573 F.2d 1332, 1338 (5th Cir. 1978)).

The egregious misconduct Mr. Tare alleges here is bribery of Magistrate Judge Hedges. In the current case, Mr. Tare previously filed a motion to disqualify the Bank's counsel. In that motion, Mr. Tare's claim was based in part on the allegations of bribery of Magistrate Judge Hedges contained in the Amended Complaint. Magistrate Judge Cecchi found that "[Mr. Tare's] allegations of bribery are wholly unsupported and without merit." See Tare v. Bank of America, No. 07-583, at DE 48 (D.N.J. Oct. 10, 2008). In affirming her denial of Mr. Tare's motion, this Court agreed. Thus, the Court will not reconsider any allegations of bribery of Magistrate Judge Hedges. The most that Mr. Tare can assert to support his claim is an allegation that the proposal by the Bank that Magistrate Judge Hedges enter a case management order amounts to an intentional deceitful act on the part of the Bank to defraud this Court in the Bankruptcy Appeals and that the Court was so deceived by not receiving all of Mr. Tare's submissions. Even if this Court were to assume that the Bank was trying to interfere with the Bankruptcy Appeals (which it has not found), as discussed above no evidence demonstrates that the Bankruptcy Appeals were affected or defrauded by the CMO since Judge Walls was aware of Mr. Tare's desire to submit additional evidence of conflict and conspiracy and ruled that such evidence, not part of the record below in the Bankruptcy Proceeding, would not be considered. Therefore, this Court finds that Mr. Tare has failed to meet the demanding standards to state a claim for this cause of action.

For the same reasons as the other causes of action, this Court also finds that leave to amend would be futile. The simple fact is that the Bank filed a Contempt Action against Mr. Tare

to enforce Injunctions issued by the Bankruptcy Court; such an action was legitimate given the circumstances. It then asked for relief via a case management order from what it thought were unduly burdensome and frivolous filings by Mr. Tare. Whether or not its application should have been made by motion versus application for a case management order or whether or not Magistrate Judge Hedges should have granted the application in the manner that he did does not alter the fact that the Bank had a legitimate reason to make the request. Therefore, this Court also dismisses this cause of action with prejudice.

  **D.**   **Conspiracy**

   1.   <u>Conspiracy to Commit the Individual Causes of Action</u>

In addition to the individual claims of malicious prosecution, abuse of process, and fraud on the court, Mr. Tare also asserts conspiracy claims related to each of these causes of action. "[A] conspiracy cannot be made the subject of a civil action unless something has been done which, absent the conspiracy, would give a right of action." <u>Middlesex Concrete Prods. & Excavating Corp. v. Carteret Indus. Ass'n</u>, 181 A.2d 774, 779 (N.J. 1962); <u>see also</u> <u>In re Orthopedic Bone Screw Products Liability Litig.</u>, 193 F.3d 781, 789 (3d Cir. 1999) ("[W]e are unaware of any jurisdiction that recognizes civil conspiracy as a cause of action requiring no separate tortious conduct."). Here, the Court has dismissed all of Mr. Tare's underlying individual causes of action against the Bank. Therefore, Mr. Tare's civil conspiracy claims are also dismissed with prejudice.

   2.   <u>Conspiracy with Marks and Honig</u>

Mr. Tare also asserts a conspiracy claim alleging that the Bank conspired with Gary N. Mark, the bankruptcy trustee, and Richard Honig, Mr. Marks' counsel in the WebSci bankruptcy.

(See Am. Compl. ¶¶ 200-214.) Mr. Marks and Mr. Honig also initiated a criminal contempt action against Mr. Tare. Although not clear from the Amended Complaint, Mr. Tare appears to assert that the Bank conspired with Mr. Marks and Mr. Honig to file their contempt action also to interfere with Mr. Tare's Bankruptcy Appeals. In support of the conspiracy he points to the temporal proximity of the filing of this contempt action and the Bank's contempt action. Aside from the fact that there is no underlying cause of action related to this contempt action and that the basis for his belief asserted in the Amended Complaint does not rise above the level of speculation, this claim must fail for the same reason that his claims directly against the Bank failed–there is no evidence in the Bankruptcy Appeals that any contempt action was used to interfere with the appeals. Judge Walls did not consider the additional evidence that Mr. Tare sought to introduce because it had not been properly presented below. Therefore, this claim is also dismissed with prejudice.

    2.    <u>Bivens Conspiracy Claim</u>

Mr. Tare also asserts a claim for a Bivens conspiracy, alleging that the Bank conspired with Magistrate Judge Hedges by bribing him in order to interfere with the Bankruptcy Appeals. In <u>Bivens v. Six Unknown Fed. Narcotics Agents</u> the Supreme Court "recognized for the first time an implied private action for damages *against federal officers* alleged to have violated a citizen's constitutional rights." 403 U.S. 388 (1971) (emphasis added). Since <u>Bivens</u>, the Supreme Court has rarely extended the reach of <u>Bivens</u>, and has never done so to reach the action of private parties. <u>See</u> <u>Corr. Svcs. Corp. v. Malesko</u>, 534 U.S. 61, 70 (2001) ("In 30 years of Bivens jurisprudence we have extended its holding only twice, to provide an otherwise nonexistent cause of action against individual officers alleged to have acted unconstitutionally, or

to provide a cause of action for a plaintiff who lacked any alternative remedy for harms caused by an individual officer's unconstitutional conduct.") In Correction Services Corporation the Court declined to permit a Bivens action against a private corporation that operated a prison for the federal government. Aside from the fact that this Court has previously held that Mr. Tare's allegations in the Amended Complaint of bribery of Magistrate Judge Hedges are unsupported, as discussed above, Mr. Tare's current action is not against any federal officer. Not only is the Bank not a federal officer, there are no allegations that the Bank was acting under the color of federal law. Thus, Mr. Tare has failed to state a claim under Bivens and leave to amend cannot cure this defect. Therefore, this claim is also dismissed with prejudice.

      **E.**      **Mr. Tare's Cross-Motion**

Mr. Tare argues that the Bank's "patently false statements should be struck from its briefs and [the Bank's] counsel should be sanctioned." (Opp'n Br. at 4.) Striking statements from a brief is unnecessary; in general, to the extent that the Court finds statements in any party's briefs to be somewhat misleading or incomplete, the Court simply disregards or discounts those statements. Here, both parties assert facts in their briefs which could be viewed as incomplete statements of the facts. Litigation between these parties has included numerous different actions over may years; the acrimony between the parties is evident in all filings. However, nothing in the Bank's briefs crosses the line justifying the imposition of sanctions against its counsel. Therefore, this Court denies Mr. Tare's cross-motion.

**IV.**      **Conclusion**

For the foregoing reasons, this Court finds that Mr. Tare has failed to state any claims upon which relief may be granted. Additionally, because the Court has also found that leave to

further amend the Complaint would be futile, it dismisses the Amended Complaint with prejudice. The Court also denies Mr. Tare's cross-motion to strike portion of the Bank's brief and for sanctions against counsel. An appropriate Order accompanies this Opinion.

DATED: March 23, 2009                         /s/ Jose L. Linares
                                              JOSE L. LINARES
                                              UNITED STATES DISTRICT JUDGE